UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODNEY GENE ANDERSON, | No. 2:07-cv-01205-MCE-GGH |
| Plaintiff, | |
| v. | MEMORANDUM AND ORDER |
| AKAL SECURITY, INC., UNITED STATES MARSHALS SERVICE, | |
| Defendants. | |

----oo0oo----

From September 2000 through November 30, 2005, Rodney Gene Anderson ("Plaintiff") worked as a Court Security Officer ("CSO") for Akal Security, Inc. ("Defendant"). Plaintiff alleges Defendant failed to transmit supplemental medical information to Defendant United States Marshals Service ("USMS") in April 2005 and again in September 2005, and that this failure resulted in Plaintiff's termination. In his Complaint, Plaintiff alleges breach of contract. Defendant moves for summary judgment, contending, inter alia, that § 301 of the Labor-Management Relations Act of 1947 preempts Plaintiff's claim.

In a separate motion, Plaintiff moves for partial summary judgment, contending that Defendant breached the parties' employment contract and wrongfully terminated Plaintiff. Because the two motions raise similar issues, both are dealt with in this Order. For the following reasons, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.[1]

**BACKGROUND**

Defendant is a New Mexico corporation under contract with the USMS to provide CSOs for Ninth Circuit courts, including the Fresno Division of the United States District Court for the Eastern District of California. On or about September 25, 2000, Plaintiff submitted an application for employment to Defendant. Shortly thereafter, Defendant hired Plaintiff as a CSO for the federal courthouse in Fresno, California.

Under a contract between Defendant and the USMS ("Contract"), each CSO was required to undergo and pass an annual medical examination to meet USMS CSO medical standards. (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. B.)

A collective bargaining agreement ("CBA") between Plaintiff's union and Defendant controlled the terms of Plaintiff's employment.

///

---

[1] Because oral argument will not be of material assistance, the Court orders these matters submitted on the briefs. E.D. Cal. Local Rule 78-230(h).

Under the CBA, the "final decision" as to a CSO's removal for failing to meet the requisite medical standards "shall be determined by the [USMS], and [Akal] shall be held harmless by the Union and the employee for any further claims made after this final determination."  (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. A.)  The CBA also provided that the "grievance procedure shall not be used for any action or order of removal of an Employee from working under the contract by the U.S. Government, or revocation of required CSO credentials by the USMS...."  Id.

On or about October 6, 2004, Plaintiff underwent an annual medical evaluation for fiscal year 2005.  On February 1, 2005, A.L. Chelton, M.D., MPH, issued Plaintiff a "Judicial Security Division Medical Review Form," stating that Plaintiff's medical determination was deferred pending further documentation.  On February 18, 2005, Defendant communicated to Plaintiff that a physician would need to address the issues identified by Dr. Chelton, and that the information would be due on March 17, 2005.  (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. D.)  On March 4, 2005, Plaintiff sent Defendant's Administrator Caroline Burkhalter a handwritten note to request an extension.  (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. E.)  On March 14, 2005, Plaintiff provided Ms. Burkhalter with the results of the audiogram examination (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. G), and on March 16, 2005, he provided her with the results of the cardiac testing (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. H).

///
///

1  At 9:19 a.m. on April 15, 2005, Plaintiff's colleague
2 Anthony N. Guerrero faxed to Ms. Burkhalter a note from John G.
3 Telles, M.D., which stated "[t]he above mentioned person my [sic]
4 return to work without restriction on 4/18/05."  (Anderson Decl.
5 in Opp'n to Mot. for Summ. J. Attach.)  Ms. Burkhalter shipped a
6 package to the USMS on April 15, 2005.  (Gunn Decl. in Supp. of
7 Mot. for Summ. J. Ex. I.)  A handwritten note on the Federal
8 Express shipping receipt reads "9 ECA Anderson."  Id.
9  On September 16, 2005, the USMS informed Defendant it was
10 missing supplemental medical information for various CSOs,
11 including Plaintiff.  (Demas Decl. in Supp. of Mot. for Summ. J.
12 Ex. H.)  The USMS stated:  "***If we do not receive the information***
13 ***within 14 days, the non-responsive CSO will be medically***
14 ***disqualified and removed from performing services under the CSO***
15 ***contract.***"  Id. (emphasis in original).  On November 15, 2005,
16 Susan Erickson, Contracting Officer for the USMS, informed
17 Defendant the USMS never received the supplemental medical
18 information requested on February 1, 2005 and again on
19 September 14, 2005, and that Defendant must immediately remove
20 Plaintiff from his position.  (Gunn Decl. in Supp. of Mot. for
21 Summ. J. Ex. J.)  On November 16, 2005, Ms. Burkhalter forwarded
22 the results of Plaintiff's audiogram examination and cardiac
23 testing, along with the Federal Express receipt, to Ms. Erickson.
24 (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. K.)  On November
25 30, 2005, Ms. Erickson wrote an email to Defendant, stating
26 "[a]fter review of Rodney Anderson's package, the government's
27 doctor is still missing information.
28 ///

4

1 Therefore the government still stands with there [sic] original
2 letter of Disqualification."  (Gunn Decl. in Supp. of Mot. for
3 Summ. J. Ex. O.)  The same day, Defendant informed Plaintiff the
4 USMS had medically disqualified him and that his termination was
5 effective immediately.  (Gunn Decl. in Supp. of Mot. for Summ. J.
6 Ex. P.)

7 On November 22, 2005, Plaintiff filed a grievance with his
8 union under the terms of the CBA.  (Gunn Decl. in Supp. of Mot.
9 for Summ. J. Ex. Q.)  On December 5, 2005, Defendant replied that
10 the CBA prohibited union members from using the grievance
11 procedure to challenge an order of removal by the U.S.
12 Government.  (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. R.)

13 On February 22, 2007, Plaintiff filed a Complaint against
14 Defendant, alleging it had failed to forward the requested
15 medical information and documentation to the USMS as was
16 necessary for Plaintiff to continue working as a CSO.
17 Plaintiff's Second Amended Complaint alleges a single breach of
18 contract claim against Defendant.

**STANDARD**

22 The Federal Rules of Civil Procedure provide for summary
23 judgment when "the pleadings, depositions, answers to
24 interrogatories, and admissions on file, together with
25 affidavits, if any, show that there is no genuine issue as to any
26 material fact and that the moving party is entitled to a judgment
27 as a matter of law."  Fed. R. Civ. P. 56(c).
28 ///

5

1 One of the principal purposes of Rule 56 is to dispose of
2 factually unsupported claims or defenses. <u>Celotex Corp. v.</u>
3 <u>Catrett</u>, 477 U.S. 317, 325 (1986).
4    Rule 56 also allows a court to grant summary adjudication on
5 part of a claim or defense. <u>See</u> Fed. R. Civ. P. 56(a) ("A party
6 claiming relief may move ... for summary judgment on all or part
7 of the claim."); <u>see also</u> <u>Allstate Ins. Co. v. Madan</u>, 889 F.
8 Supp. 374, 378-79 (C.D. Cal. 1995); <u>France Stone Co., Inc. v.</u>
9 <u>Charter Twp. of Monroe</u>, 790 F. Supp. 707, 710 (E.D. Mich. 1992).
10    The standard that applies to a motion for summary
11 adjudication is the same as that which applies to a motion for
12 summary judgment. <u>See</u> Fed. R. Civ. P. 56(a), 56(c); <u>Mora v.</u>
13 <u>ChemTronics</u>, 16 F. Supp. 2d 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing
> the district court of the basis for its motion, and
> identifying those portions of 'the pleadings,
> depositions, answers to interrogatories, and admissions
> on file together with the affidavits, if any,' which it
> believes demonstrate the absence of a genuine issue of
> material fact.

19 <u>Celotex Corp. v. Catrett</u>, 477 U.S. at 323 (quoting Rule 56(c)).
20    If the moving party meets its initial responsibility, the
21 burden then shifts to the opposing party to establish that a
22 genuine issue as to any material fact actually does exist.
23 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
24 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
25 253, 288-89 (1968).
26 ///
27 ///
28 ///

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed."  Anderson, 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. (14 Wall.) 442, 448 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

///
///
///

7

1    In resolving a summary judgment motion, the evidence of the
2 opposing party is to be believed, and all reasonable inferences
3 that may be drawn from the facts placed before the court must be
4 drawn in favor of the opposing party. Anderson, 477 U.S. at 255.
5 Nevertheless, inferences are not drawn out of the air, and it is
6 the opposing party's obligation to produce a factual predicate
7 from which the inference may be drawn. Richards v. Nielsen
8 Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
9 aff'd, 810 F.2d 898 (9th Cir. 1987).

**ANALYSIS**

To prove a breach of contract under California law, a party must demonstrate the existence of a contract, the plaintiff's performance of the contract or excuse for nonperformance, the defendant's breach, and resulting damage to the plaintiff. See, e.g., McDonald v. John P. Scripps Newspaper, 210 Cal. App. 3d 100, 104 (Cal. Ct. App. 1989).

Plaintiff cites several potential contracts breached by Defendant. In the Second Amended Complaint, Plaintiff references his application for employment with Defendant (Second Am. Compl. 2:23-26) and the CBA (Second Am. Compl. 5:28-6:8). In the various moving papers, Plaintiff references the Contract, Defendant's February 18, 2005 memorandum to Plaintiff, and USMS's September 16, 2005 letter to Defendant. The validity of each document as a contract, for purposes of Plaintiff's sole claim against Defendant, will be addressed in turn.

///

### 1.   The Collective Bargaining Agreement

Plaintiff claims Defendant violated the CBA in failing to put forth its "best efforts" to allow Plaintiff "to perform and render loyal and efficient work and services." (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. A.) Plaintiff alleges this violation occurred when Defendant failed to timely transmit medical documentation to the USMS. This Court must determine whether the breach of contract claim requires the Court merely to "look to" the terms of the CBA, which it is permitted to do, or to "interpret" the terms of the CBA, which it is not.

Under § 301 of the Labor-Management Relations Act of 1947 (LMRA), federal courts have jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). The statute was a "mandate" for federal courts "to fashion a body of federal common law to be used to address disputes arising out of labor contracts." Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209 (1985). As a result of this expansive mandate, the "preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23 (1983). A preempted claim "purportedly based on [a] ... state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, Inc. v. Williams, 482 U.S. 386, 393 (1987).

///

9

A state law claim arises under federal law when "[t]he heart of the complaint [is] a ... clause in the collective bargaining agreement." Avco Corp. v. Machinists, 390 U.S. 557, 558 (1968).

Section 301 preempts application of a state law "only if such application requires the interpretation of a collective-bargaining agreement." Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 411 (1988). "When resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." Lueck, 471 U.S. at 220.

The Court of Appeals for the Ninth Circuit recently clarified the analysis for determining whether § 301 preempts a particular state cause of action. A court must first inquire

> whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and our analysis ends there. If, however, the right exists independently of the CBA, we must still consider whether it is . . . substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law.

Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059-60 (9th Cir. 2007) (internal citations and quotations omitted).

To determine whether a state law right is substantially dependent on the terms of a CBA, courts must decide whether a particular claim can be resolved by "look[ing] to" as opposed to interpreting the CBA.

///

10

See Livadas v. Bradshaw, 512 U.S. 107, 125 (1994); Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691 (9th Cir. 2001). Claims that may be resolved by looking to the CBA are not preempted; those interpreting the CBA are.  This distinction is "not always clear or amenable to a bright-line test." Cramer, 255 F.3d at 691.  Prior Supreme Court and Ninth Circuit decisions provide some guidance in making this determination.  Neither "'look[ing]' to the CBA merely to discern that none of its terms is reasonably in dispute," see Id. at 692, nor "the simple need to refer to bargained-for wage rates in computing [a] penalty," see Livadas, 512 U.S. at 125, is enough to warrant preemption.

Because resolution of Plaintiff's breach of contract claim requires this Court to interpret the terms of the CBA, § 301 preempts the claim.  Plaintiff admits the "CBA is silent as to the obligations of Akal or the CSOs for the transmission of medical doumentation [sic] to the USMS."  (Pl.'s Opp'n to Mot. for Summ. J. 7:3-4.)  Section 13.2 of the CBA addresses physical examinations, but does not detail the parties' responsibilities in transmitting medical documentation to the USMS.  (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. A.)  Section 1.7 addresses the intent of the parties.  It reads:  "The Union and [Akal Security, Inc.] will put forth their best efforts to cause the Bargaining Unit Employees, individually and collectively, to perform and render loyal and efficient work and services...." Id. (emphasis added).  Determining whether "best efforts" encompasses a pledge by Defendant to timely transmit medical documentation to the USMS necessarily requires this Court to interpret rather than merely look to the terms of the CBA.

11

1 Section 301 of the LMRA therefore preempts the breach of contract
2 claim.  Accordingly, Plaintiff cannot base his breach of contract
3 claim upon the CBA.

### 2. The Ninth Judicial Circuit Contract

Plaintiff claims Defendant violated the Contract in failing to timely transmit the medical documentation to the USMS.  To enforce the Contract, Plaintiff must establish himself as a third party beneficiary.

"A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it."  Cal. Civ. Code § 1559.  While it is not necessary for the third party to be specifically named as a beneficiary in the contract in order to recover, "an intent to make the obligation inure to the benefit of the third party must have been clearly manifested by the contracting parties."  R. J. Cardinal Co. v. Ritchie, 218 Cal. App. 2d 124, 136 (Cal. Ct. App. 1963) (quoting Shutes v. Cheney, 123 Cal. App. 2d 256, 262 (Cal. Ct. App. 1954)).  The test for deciding whether a contract inures to the benefit of a third party is whether an intent to benefit the third party appears from the terms of the contract.  Luis v. Orcutt Town Water Co., 204 Cal. App. 2d 433, 442 (Cal. Ct. App. 1962).  "The party claiming to be a third-party beneficiary bears the burden of proving that the contracting parties actually promised the performance which the third party beneficiary seeks."  Whiteside v. Tenet Healthcare Corp., 101 Cal. App. 4th 693, 708 (Cal. Ct. App. 2002) (emphasis in original).

12

Under section C-16(c)(1) of the Contract, Defendant must "require all CSOs and each CSO applicant to complete a comprehensive medical form, USM-229 ... and undergo a medical examination by a designated examining physician." (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. B.)  Section C-16(c)(2) addresses the transmission of USM-229s to the USMS:

> Incomplete USM-229s will delay the process of qualifying an individual and thus impact the Contractor's performance and ability to supply the required security coverage.  For that reason, the Contractor must establish and enforce quality assurance procedures to minimize such delays.  <u>The contractor must also submit the USM-229 to the Judicial Protective Services, Personnel Support Services Branch, within the established time frames for final review and approval.</u>

(Gunn Decl. in Supp. of Mot. for Summ. J. Ex. B) (emphasis added).

Although the parties may indeed have intended section C-16(c)(2) to inure for the benefit of individual CSOs, the text does not "clearly manifest" such an intent.  The parties to this contract acknowledge that incomplete USM-229 forms "will delay the process of qualifying an individual," which would subsequently  "impact Contractor's performance and ability to supply the required security coverage." <u>Id</u>.  It is "[f]or that reason" (i.e., so that the "Contractor's ... ability to supply the required security coverage" is not affected), that Defendant is obliged to minimize such delays in qualifying CSOs.  Although a delay in the process of qualifying an individual CSO is mentioned, the phrase "for that reason" suggests that the quality assurance procedures inure primarily to the benefit of Defendant in order to supply the required security coverage.
///

13

Thus, the requirement that Defendant submit USM-229s "within the established time frames for final review and approval" cannot be said to clearly manifest an intent to benefit the individual CSOs. Because Plaintiff has not demonstrated that § C-16(c)(2) was intended for his benefit, he has not established himself as a third party beneficiary. Accordingly, Plaintiff cannot base his breach of contract claim upon the Contract.

### 3. Plaintiff's Employment Application, Defendant's February 18, 2005 Memorandum to Plaintiff, and USMS's September 16, 2005 letter to Defendant

Plaintiff refers to statements in Akal's employment application, in Defendant's February 18, 2005 memorandum, and in USMS's September 16, 2005 letter to Defendant in support of his breach of contract claim. The Akal application states that "[a]t Akal Security, all terms and conditions of employment are and will continue to be established on the basis of the individual's qualifications and ability to perform the job." (Anderson Decl. in Supp. of Mot. for Summ. J. Ex. E.) The February 18, 2005 memorandum requested that Plaintiff "provide the requested medical information to Akal as soon as possible, but no later than <u>5 days before Due Date</u>" to "allow sufficient time [for Akal] to forward the requested medical information to USMS before the Due Date." (Gunn Decl. in Supp. of Mot. for Summ. J. Ex. D) (emphasis in original). USMS's September 16, 2005 letter to Defendant requested missing supplemental medical information for various CSOs, including Plaintiff, within fourteen days. USMS wrote:

14

"***If we do not receive the information within 14 days, the non-responsive CSO will be medically disqualified and removed from performing services under the CSO contract.***"  (Demas Decl. in Supp. of Mot. for Summ. J. Ex. H) (emphasis in original).

None of these documents constitutes a contract under California law.  "An employment contract is governed by the same rules that apply to other types of contracts, including the requirements of offer and acceptance." Reynolds Elec. & Eng'g Co. v. Workmen's Comp. Appeals Bd., 65 Cal. 2d 429, 433 (1966). Thus, "an application for employment is not a contract; it is a mere solicitation of an offer of employment." Harden v. Maybelline Sales Corp., 230 Cal. App. 3d 1550, 1555 (Cal. Ct. App. 1991).  The February 18, 2005 memorandum and the September 16, 2005 letter are not contracts because they do not include an offer, an acceptance, or any cause or consideration. Cal. Civ. Code § 1550(4).  Accordingly, Plaintiff cannot base his breach of contract claim upon his application for employment, on the February 18, 2005 memorandum, or on the September 16, 2005 letter.

///
///
///
///
///
///
///
///
///

15

**CONCLUSION**

Plaintiff has failed to demonstrate that there is any material issue for trial.  Accordingly, Defendant's Motion for Summary Judgment is GRANTED and Plaintiff's Motion for Summary Judgment is DENIED.  Because Plaintiff's claim against the USMS was dismissed without leave to amend (see Mem. & Order, June 12, 2008), there are no viable issues remaining in this case. Accordingly, the Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: August 19, 2008

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE